SAMUEL P. FOWLER & others *vs.* SELECTMEN AND TREASURER OF DANVERS.

The *St.* of 1863, c. 38, does not legalize a vote of the inhabitants of a town to pay money to persons who had already enlisted in the service of the United States.

BILL IN EQUITY by ten tax-payers of Danvers, setting forth that on the 11th of September 1862 the inhabitants of the town passed the following vote in town-meeting: " Voted, that the town of Danvers pay a bounty of one hundred and twenty-five dollars to each person, a resident of the town, or his legal representative, who has enlisted in the United States service for three years or the war, who has not already received a bounty from the town, provided said person has served nine months, or has been earlier discharged on account of injuries received in such service ; said bounty to be payable at the end of said volunteer's service."

That on the 8th of August 1863 the inhabitants of the town in town-meeting passed a vote appropriating a sum not exceeding fifty thousand dollars to meet the expenditure contemplated by the above vote, and authorizing the treasurer to borrow from time to time such sums of money as might be necessary to pay the said bounty, as the same should become due, and be demanded by the persons entitled thereto; that accordingly certain persons coming within the terms of first vote have demanded of the defendants payment of the bounty so voted; and that the purpose for which the appropriation was made is illegal. The prayer was for an injunction, prohibiting the borrowing or payment of any money under said vote, and for other and further relief.

The defendants filed a general demurrer, and the case was reserved by *Dewey*, J. for the determination of the whole court.

*S. B. Ives, Jr.*, for the defendants. The words of *St.* 1863, *c.* 38, are broad enough to include the present case. At the time of its passage, every town in the state had voted bounties to volunteers. Questions had been raised as to the legality of such action, and this statute was passed to settle these questions. What is a bounty? The very force of the word signifies a gift, and negatives the idea of a consideration, in the legal sense of the word. The town received no consideration for the bounties offered to the future volunteers. In its corporate capacity, it had no duty to perform in raising men to fill its quota. The inhabitants of Danvers have seen fit to do an act of simple justice to those of their citizens who volunteered in the early part of the war, from motives of patriotism and without the promise of bounty; and they consider that the statute sanctions their act.

No question arises as to the consideration of the promise. This case is not to be decided upon the same principles as if it were an action brought against the town by some one of the persons named in the vote. In such an action, the question of the validity of these votes as a contract might arise. Independently of the statute, the objections would be that the vote was not within the range of municipal powers. If the statute relieves the case of that difficulty, the petitioners can only avail

themselves of the objection now under consideration when they can induce the town to defend a suit brought by one of the vol-unteers for this bounty.

*W. G. Choate*, for the plaintiffs.

BIGELOW, C. J.   On a first reading of *St.* 1863, *c.* 38,* on the construction of which the decision of this case depends, its lan-guage seems to be equivocal and ambiguous, and to furnish room for a very plausible argument in support of the interpreta-tion on which the defendants insist.   But on a careful consider-tion of the terms of the act, and construing them in the light of the circumstances to which it is well known the enactment owes its origin, and the manifest purpose which it was designed to accomplish, we are led to the conclusion, entirely clear and satisfactory to our own minds, that it cannot be justly interpreted in such manner as to authorize and give validity to the votes of the town set out in the petition, or to sanction the expenditure of the money of the town or the use of its credit for the pur-pose alleged to be contemplated by the defendants.

Prior to the passage of the statute under consideration, and at the time when the vote of the town of Danvers set out in the petition was passed, on the 11th day of September 1862, towns in their corporate capacity had no authority to raise or appropri-ate money for the payment of bounties or other compensation to soldiers enlisting in the service of the United States, except to defray expenses and fulfil contracts incurred or entered into, as provided in *St.* 1861, *c.* 222, § 2, prior to the 23d day of May 1861, the day on which the last mentioned statute went into operation.   Indeed, any expenditure or appropriation for such purpose, other than therein expressly authorized, was prohibited by the third section of the same act.   But notwithstanding such want of authority, and in the face of this express prohibition

---

* This statute is as follows : " The acts and doings of cities and towns in pay-ing or agreeing to pay bounties and recruiting expenses for soldiers already furnished by them, upon the requisition of the United States, and upon the call of the governor, for the present war, together with taxes that have been or may be assessed, and payments and obligations that have been or may be made or given by them for those objects, are hereby ratified, confirmed and made valid."

under the urgent necessity of calls for troops from the national and state authorities, many of the municipal corporations in the Commonwealth during the year 1862 had proceeded to vote and raise large sums of money for the purpose of holding out inducements in the form of bounties and increased pay to persons to fill up the quotas of volunteers assigned to such cities and towns respectively. In pursuance of these votes and appropriations, not only had money already on hand been expended, but contracts had been entered into for the payment of bounties to volunteers, and also for the loan of large sums on the credit of towns which had been disbursed for recruiting purposes. So great was the exigency, and so unanimous was the consent of all persons to meet it promptly, that not in a single instance, so far as we know, was any attempt made to defeat such appropriations or prevent such payments by legal process, although the action of the towns and cities in thus raising and expending money was clearly illegal. This was the state of things which existed at the close of the year 1862, and at the time the legislature assembled in January 1863. One of the earliest of the general laws passed at this session was the statute under consideration, entitled "An act to legalize the doings of towns in aid of the war." In view of these facts, we cannot entertain a doubt as to the intention of the legislature in passing this statute. A necessity had arisen for the expenditure of money by towns, which had not been anticipated or provided for by previous legislation, and which was occasioned by an unforeseen emergency, by which a duty in its nature public and patriotic had been imposed on the inhabitants of towns. Sound policy and a due regard to the welfare and interests of the people of the Commonwealth required that the action of cities and towns, undertaken under such circumstances, should be sanctioned and made valid by legislative enactment. But further than this it was not wise or expedient to go. As the unlawful contracts or unauthorized expenditures were the result of necessity, that very necessity furnished the appropriate limit beyond which legislative sanction to illegal appropriations and agreements should not be extended. And this we think is the limit which the legislature

designed to fix. They intended only to make valid all votes or expenditures of a town or city which were in furtherance of the great purpose of obtaining volunteers to fill up the calls made on the state, and complete the quotas which had been assigned to the several towns. So much was demanded by the public exigency under which towns had acted in raising and appropriating money. But it was not essential to the great public object which had given rise to this exigency, or in any way promotive of it, that bounties or gratuities should be paid to those who had previously enlisted in the army of the United States, and were already engaged in the public service. Such an expenditure of money might be generous, and even just; but it was not necessary, or required by considerations founded in a wise and sound policy.

This interpretation of the statute, drawn from the circumstances under which it was enacted and the manifest purpose it was designed to accomplish, is fully supported by a just interpretation of the language in which it is expressed. Looking to this only, we find that the declared object of the statute is to ratify, confirm and make valid " the acts and doings of cities and towns in paying or agreeing to pay bounties and recruiting expenses for soldiers already furnished by them." This is equivalent to an enactment that payments and agreements for the payment of bounties and expenses by means of which soldiers have been so furnished shall be held valid. Of itself, the word " bounty," according to the more common and received usage of the language as applied to the subject matter, signifies money paid or a premium offered to encourage or promote an object, or procure a particular act or thing to be done. Such is the meaning attributed to it in dictionaries of approved authority, when used in connection with the enlistment of soldiers. But if its signification, standing by itself, might be deemed to be equivocal or doubtful, it is made quite clear by the context. It is coupled with the phrase " recruiting expenses," which *ex vi termini* can only be applied to costs and charges which had been incurred in procuring or enlisting troops for future service, and could have no reference to expenditures for or on account of

those who had previously enlisted and were already in the army. Taking the sentence together, it clearly indicates an intention to ratify and confirm those acts and doings which had been found necessary to enable towns to raise troops, and not those which were designed only to give a gratuity or furnish an additional compensation to soldiers who had entered service without any inducement in the way of bounty or enhanced pay. It is not reasonable or according to any just canon of exposition to suppose that two objects of an entirely distinct and independent nature were embraced in the same clause. The maxim of Lord Bacon, *Copulatio verborum indicat acceptationem in eodem sensu,* is a safe and sound rule in the construction of doubtful phrases and sentences ; and, unless there is something to indicate a different intent, it is fair to presume that a word in question and those which surround it or immediately follow it are designed to be *ejusdem generis,* and referrible to the same subject matter, or to be interpreted in a similar sense.

Nor does it seem to us to be too great a refinement on the use of words, or to partake of hypercriticism, to observe that the bounties and expenses which the framers of the statute intended to embrace within its provisions are those paid or agreed to be paid " for," and not to, soldiers ; indicating, as we think, payments or contracts made to procure soldiers, and not those which were designed to furnish rewards or gratuities to those already in the service. It may be added, that the title of the act tends to confirm this construction. A payment of money as a bounty to induce a person to enlist as a soldier is an act " in aid of the war," because it tends to increase the ranks and add to the strength of the army in the field. But it is difficult to see in what way any effective support or assistance is furnished " in aid of the war" by giving increased compensation to those who are already enlisted, and whose services as soldiers are already pledged to the government.

For these reasons, we are of opinion that the petition sets out sufficient cause for an interposition by this court to prevent an illegal and unauthorized expenditure of money by the defend ants, and that a decree must be entered that the

*Injunction be made perpetual.*